1  PETER J. BARRETT #210696 (CA)
   KUTAK ROCK LLP
2  1111 East Main Street, Suite 800
   Richmond, VA 23219
3  Phone: (804) 644-1700
   Facsimile: (804) 783-6192
4  Peter.Barrett@kutakrock.com

5  JACOB L. SHERRARD #221835 (CA)
   KUTAK ROCK LLP
6  8601 North Scottsdale Road, Suite 300
   Scottsdale, AZ  85253-2742
7  (480) 429-5000
   Facsimile: (480) 429-5001
8  Jacob.sherrard@kutakrock.com
   *Attorneys for Pacific Premier Bank*

9

10              **UNITED STATES BANKRUPTCY COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA (RIVERSIDE)**

| 12 | In Re | Chapter 11 Proceedings |
|---|---|---|
| 13 | 66 on 66 Bar & Grill, LLC, | Lead Case No.:  6:18-bk-14462-SY |
| 14 | Debtor. | Jointly Administered:  6:18-bk-14466-SY |
| 15 | Golden Crown Properties, LLC, | **MOTION TO DISMISS, OR, ALTERNATIVELY, MOTION TO APPOINT TRUSTEE** |
| 16 | Debtor. | *[Hearing Date and Time to be Set by the Court]; Filed Concurrently with Application for Order Setting Hearing on Shortened Notice [LBR 9075-1(b)]* |
| 17 | | |
| 18 | | |
| 19 | | Place:  Courtroom 302 |
| 20 | | 3420 Twelfth Street  Riverside, California |

21

22

23

24

25

26

27

28

4834-3767-8951.2

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ……..………………… 3

I. PRELIMINARY STATEMENT …….…………………………………….. 3

II. JURISDICTION AND VENUE …………………………………………. 4

III. IDENTIFICATION OF THE PERSONS INVOLVED …………………...… 4

IV. BACKGROUND …………………………………………………..……. 5

    A.    The Golden Loan and Collateral Securing Same ……………………. 5

    B.    Default Under the Golden Loan Documents …………………..……. 7

    C.    Arizona Receivership …………………………………………….. 10

    D.    Debtors' Harm to the Golden Loan Collateral Post-Petition ………… 12

V. LEGAL ARGUMENT …………………………………………………… 15

    A.    Loss to, or Diminution of, the Estate and Absence of a Reasonable
        Likelihood of Rehabilitation ……………………………………… 16

    B.    Chapter 11 Filing was in Bad Faith …………………………….….. 18

    C.    Debtor's Conduct Requires a Chapter 11 Trustee be Appointed …..... 19

    D.    Appointment of Trustee is in the Best Interests of Creditors
        Under 11 U.S.C. § 1104 (a)(2)…………………………………… 22

VI. CONCLUSION ……………………………………………………….... 24

4834-3767-8951.2

1

# TABLE OF AUTHORITIES

2

**Cases**

3    *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr.S.D.N.Y. 1998) ...........    21

4    *In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr.E.D.N.Y. 1992) ...........    17

5    *In re Euro-American Lodging Corp*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) ... 22, 23

6    *In re Gilliam*, 2005 WL 6960202, at *3 (B.A.P. 9th Cir. Aug. 10, 2005) ...........    16

7    *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) ...........    23

8    *In re IPofA West Oaks Mall, LP*, 2007 WL 3223295

9    at *3 (Bankr. E.D. Va. Oct 29, 2007) and *4 ........................................... 20-22

10    *In re JTR Corp.*, 958 F.2d 602, 604 (4th Cir. 1992) .........................    21

11    *In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 535 (Bankr. N.D. 2011) .... 15, 17

12    *In re La Sherene, Inc.*, 3 B.R. 169, 175 (Bankr.N.D.Ga. 1980) .......................    20

13    *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ....................... 16-18

14    *In re Marsch*, 36 F.3d at 828 ................................................................    18

15    *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) .........    22

16    *In the Matter of Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000) ........... 20, 21

17    *In re Mense*, 509 B.R. 269, 284 (Bankr.C.D. Cal. 2014) ...........................    16-18

18    *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 699 (Bankr. C.D. Cal. 2008) .........    21

19    *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) ...................    20

20    *In re Petit*, 182 B.R. 64, 70 (D. Me. 1995) .......................................    21

21    *In re Products Int'l Co.*, 395 B.R. 101, 109-10 (Bankr. D. Ariz. 2008) .............. 15, 16

22    *Prof'l Accountants Referral Services*, 142 BR. 424, 429 (Bankr.D.Colo. 1992) .....    21

23    *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83

24    (B.A.P. 9th Cir. 1995) ................................................................ 16, 18, 19

25    *In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000)

26    subsequently aff'd 336 F.3d 864 (9th Cir. 2003) ...................................... 16, 19

27

28

*State of Idaho, Dept. of Lands v. Arnold (In re Arnold),*

    806 F.2d 937, 939 (9th Cir. 1986) ……………………………….…….. 18

*In re The Bible Speaks,* 74 B.R. 511, 513 (Bankr. D. Mass. 1987) ………………… 21

*In re The Centre for Management and Technology, Inc.,* 2007 WL 3197221,

    at \*6 (Bankr. D. Md. Oct. 26, 2007) ……………………………………… 23

*In re V. Savino Oil and Heating Co.,* 99 B.R. 518, 526 (Bankr. E.D.N.Y. ………… 22

*In re Vallambrosa Holdings, L.L.C.,* 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009) ……. 17, 18

**Statutes**

11 U.S.C. § 1104(a)(1) …………………………………………… 20

11 U.S.C. § 1104(a)(2) ………………………………….………... 22

11 U.S.C. § 1112(b)(1) …………………………………………… 15

11 U.S.C. § 1112(b)(4) ………………………………….……… 15, 16

11 U.S.C. § 1112(b)(4)(A) ………………………………………... 16

28 U.S.C. § 157(b)(2)(A) and (O) …………………………………... 4

28 U.S.C. § 157 ………………………………..……………………... 4

28 U.S.C. § 1334(b) ………………………………………………... 4

28 U.S.C. § 1408 …………………………………………………... 4

28 U.S.C. § 1409……………………………………………………... 4

**Rules**

Federal Rules of Bankruptcy Procedure 2007.1 and 9014…………………………... 19

4834-3767-8951.2

1    **TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY**

2    **JUDGE; THE TWENTY LARGEST CREDITORS AND THE OFFICE OF THE**

3    **UNITED STATES TRUSTEE:**

4    **PLEASE TAKE NOTICE** that, Pacific Premier Bank ("**PPB**"), by and through its

5    undersigned counsel, hereby files this motion (the "**Motion**") for entry of an order pursuant

6    to section 1112(b) of Title 11 of the United States Code (the "**Bankruptcy Code**")

7    dismissing or, in the alternative, converting the jointly administered chapter 11 bankruptcy

8    cases (the "**Chapter 11 Case**") of the above-captioned debtors and debtors in possession to a

9    case under chapter 7 of the Bankruptcy Code or, in the alternative, appointing a chapter 11

10    trustee pursuant to section 1104 of the Bankruptcy Code.[1]

11    **PLEASE TAKE FURTHER NOTICE** that PPB has served written pleadings by

12    overnight mail on the following parties or counsel for parties in interest:  Debtors, the United

13    States Trustee, any committee of creditors or equity security holders established prior or

14    subsequent to the chapter 11 filing or, if none, the twenty largest unsecured creditors and any

15    secured creditor whose collateral includes cash collateral or whose lien(s) might be affected

16    by the relief sought.

17    **PLEASE TAKE FURTHER NOTICE**, that this Motion is based upon the

18    accompanying Memorandum of Points and Authorities, and the exhibits attached thereto,

19    filed concurrently with this Motion, arguments of counsel, and other admissible evidence

20    properly before this Court at or before the hearing on this Motion.  In addition, PPB requests

21    that the Court take judicial notice of all documents filed with the court in this case.

22    **WHEREFORE**, PPB respectfully prays that the Court grant the Motion and dismiss

23    or, in the alternative, convert the Chapter 11 Case to a case under chapter 7 of the

24    Bankruptcy Code, or, in the alternative, PPB respectfully requests this Court appoint a

25

---

[1] On June 4, 2018 this Court ordered administrative consolidation of In re 66 on 66 Bar & Grill, LLC (6:18-bk-14462-SY) and In re Golden Crown Properties, LLC (6:18-bk-14466-SY)[Dkt. 16].  66 on 66 Bar & Grill, LLC ("**Canyon**") and Golden Crown Properties, LLC ("**Golden Crown**") are sister juridical entities (Canyon and Golden Crown will be referred to herein together as "**Debtors**") owned by the same principals that operated a hotel and restaurant generally located at 3100 East Andy Devine Avenue, Kingman, Arizona 86401 (the "**Kingman Hotel**") before they abandoned same earlier this year forcing PPB to put a receiver in place to secure the Golden Loan Collateral (defined herein).

1   chapter 11 trustee.  An application seeking consideration of this motion on shortened notice

2   has been filed contemporaneously herewith.

3   DATED:  June 13, 2018.          KUTAK ROCK LLP

4

5                        By:/s/ Jacob L. Sherrard

6                        Peter J. Barrett
                        1111 East Main Street, Suite 800

7                        Richmond, VA 23219

8                        Jacob L. Sherrard
                        8601 North Scottsdale Road, Suite 300

9                        Scottsdale, AZ  85253-2742
                        *Attorneys for Pacific Premier Bank*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4834-3767-8951.2

## MEMORANDUM OF POINTS AND LEGAL AUTHORITIES

### I.    Preliminary Statement

When management has demonstrated its inability or unwillingness to accomplish a turnaround, the protections and powers the Bankruptcy Code granted to a debtor-in-possession are no longer appropriate.  This policy is enacted by section 1112(b) of the Bankruptcy Code, which provides for dismissal of the case or conversion to a case under chapter 7 if cause is shown, and allows only narrow exceptions by which a debtor can prevent dismissal or conversion.

For the reasons stated herein, cause exists for this Chapter 11 Case to be dismissed. The Debtors have admitted that they are unable to operate the businesses through their abandonment of the same earlier this year and stipulation to the appointment of a receiver. The Court appointed receiver has advised PPB that Debtors failed to pay their employees for approximately three (3) weeks prior to closing the doors on the business in violation of various federal and state laws.  Moreover, PPB is advised that Debtors have failed to pay approximately four (4) years of Transaction Privilege Taxes owing to the Arizona Department of Revenue.  Further, in violation of section 543 of the Bankruptcy Code after Debtors filed the Chapter 11 Case they dispatched their agents to take control of the Golden Loan Collateral (as hereinafter defined) without providing the receiver in his capacity as a Custodian under the Bankruptcy Code with the opportunity to provide an accounting and otherwise facilitate a smooth turn-over of the business operations.  The Debtors' failure to work with the Custodian interrupted the business, caused certain employees to quit and has created additional claims against the estate given it appears that certain executory contracts were not addressed properly and consistent with the Bankruptcy Code by Debtors and their agents.

Debtors' failure to operate the Kingman Hotel (they quite literally walked away from the Kingman Hotel after chaining the doors shut), or honor their debts including payroll and tax obligations coupled with Debtors' actions since the Chapter 11 Case was filed indicate

4834-3767-8951.2

gross mismanagement of the bankruptcy estate and demonstrate a clear inability to reorganize.  There was no reasonable justification for Debtors to abandon the Kingman Hotel and otherwise fail to pay their debts including wages and taxes.  Moreover, the actions Debtors have taken or caused to be taken (or failed to take) since the inception of this Chapter 11 Case indicate Debtors lack the ability, or means, to reorganize the Kingman Hotel.  Further, to date, Debtors have failed to obtain (or even seek) the most basic relief and authority from the Court to operate as a debtors in possession, including, perhaps most importantly, authorization to use cash collateral.  It is plainly evident Debtors filed the Chapter 11 Case solely for the purposes of avoiding PPB's efforts to foreclose on the Golden Loan Collateral.  As a result, PPB requests that the Chapter 11 Case be dismissed (or converted) or, in the alternative, that Debtor be otherwise divested of control over the Debtor's estate to protect the best interests of the creditors, including PPB.

## II.    Jurisdiction and Venue

1.    The Court has jurisdiction over the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## III.   Identification of the Persons Involved

2.    PPB is a bank chartered under the laws of the State of California with its principal place of business in Irvine, California and is duly authorized to conduct business at all times relevant herein.

3.    Upon information and belief, Golden Crown is a California limited liability company conducting business in Mohave County, Arizona.  **Exhibit 1.**

4.    Upon information and belief, Canyon is an Arizona corporation conducting business in Mohave County, Arizona.  **Exhibit 2.**

4

4834-3767-8951.2

5. Upon information and belief, Sarwat S. Zubaid ("**Sarwat**") is a real person residing in Redlands, California owning an equity interest in both Golden Crown and Canyon.

6. Upon information and belief, Noble Zubaid ("**Noble**") is a real person residing in Redlands, California owning an equity interest in both Golden Crown and Canyon.

7. Simon Consulting, LLC is an Arizona limited liability company acting through Mr. Robert Itkin (the "Receiver") was appointed by the Superior Court for Mohave County ("**Mohave Court**") on, or about, March 29, 2018 to serve as the Court appointed receiver over the Golden Loan Collateral in case number S8015CV201800268.

8. Advance Management & Investment, LLC ("**AMI**") is an Arizona limited liability company is the management company retained by the Receiver to operate the Kingman Hotel during the receivership.

9. Upon information and belief Tristar Hotel Group ("**Tristar**") is an Arizona limited liability company and the management company Debtors directed to take over the Golden Loan Collateral without, among other things, receiving approval from this Court.[2]

## IV. **Background**

### A. **The Golden Loan and Collateral Securing Same.**

10. On, or about, December 20, 2016 PPB entered into that certain "Business Loan Agreement" (the "**Golden Loan Agreement**") whereby, among other things, PPB agreed to advance up to the principal amount of $3,980,000 to Golden Crown and Canyon[3] (the "**Golden Loan**"), the repayment of which was guaranteed jointly and severally by Sarwat

---

[2] It is also important to note that counsel for PPB has requested information from both Debtors' counsel and Tristar relevant to Tristar's qualifications to be involved in this matter which requests were refused.

[3] Golden Crown and Canyon will collectively be referred to a "**Borrowers**" or "**Debtors**".

5

and Noble (together "**Guarantors**").    A true and correct copy of the Golden Loan Agreement is attached hereto as **Exhibit 3** and incorporated herein by this reference.    A true and correct copy of the "Unconditional Guarantee" (the "**Golden Guarantee**") executed by Guarantors is attached hereto as **Exhibit 4** and incorporated herein by this reference.

11.    The Golden Loan was obtained for the purposes of, among other things, refinancing and otherwise improving the Kingman Hotel, a hotel and restaurant property in Kingman Arizona more specifically described in the Golden DOT (defined below). Collectively, the Kingman Hotel, Rents (as defined in the Golden DOT and/or Golden Assignment of Rents (defined below)) and certain personal property (as defined in the Golden Security Agreement (defined below)) are referred to herein as the "**Golden Loan Collateral**".

12.    The Golden Loan is evidenced by, among other things, that certain "Note" dated December 20, 2016, in the maximum principal amount of $3,980,000.00 (the "**Golden Note**").    A true and correct copy of the Golden Note is attached hereto as **Exhibit 5** and incorporated herein by this reference.

13.    To secure Debtors' obligations under the Golden Loan Agreement and Golden Note, Borrowers also executed and delivered that certain "Commercial Security Agreement" dated December 20, 2016 (the "**Golden Security Agreement**") for the benefit of PPB which granted PPB a valid, perfected first priority lien on and security interest on all of the Debtors' assets.    A true and correct copy of the Golden Security Agreement is attached hereto as **Exhibit 6** and incorporated herein by this reference.

14.    To further secure their obligations under the Golden Loan Agreement and Golden Note, Borrowers executed and delivered that certain "Assignment of Rents" dated

6

December 20, 2016, and recorded on January 24, 2017 at Mohave County Recorder No. 2017003524 (the "**Golden Assignment of Rents**").  A true and correct copy of the Golden Assignment of Rents is attached hereto as **Exhibit 7** and incorporated herein by this reference.

15.    To further secure Debtors' obligations under the Golden Loan Agreement and Golden Note, Borrowers executed and delivered that certain "Deed of Trust" dated December 20, 2016, and recorded on January 24, 2017 at Mohave County Recorder No. 2017003523 (the "**Golden DOT**").  A true and correct copy of the Golden DOT is attached hereto as **Exhibit 8** and incorporated herein by reference.  The Golden Loan Agreement, Golden Guarantees, Golden Note, Golden Security Agreement, Golden Assignment of Rents and Golden DOT shall collectively be referred to as the "**Golden Loan Documents**".

## B.    Default Under the Golden Loan Documents.

16.    Debtors failed to make the payments as required under the Golden Loan Documents on July 1, 2017, which was a default pursuant to the express terms of the Golden Loan Documents.

17.    Debtors also failed to make the payments as required under the Golden Loan Documents from July 1, 2017 until Debtors reinstated the Golden Loan as set forth with more detail herein on December 14, 2017.

18.    Based on Debtors failures to make the payments as required under the Golden Loan Documents from July 1, 2017 on, or about, December 4, 2017 PPB filed a Complaint in the ("**Mohave Court**") captioned Pacific Premier Bank v. Golden Crown Properties, LLC, et al. (S8015CV201700960) to obtain a receiver for the Golden Loan Collateral.

19.    On or about December 14, 2017, the day before the Order to Show Cause hearing set by the Mohave Court to appoint the Receiver requested by PPB, the Debtors tendered the amounts necessary to reinstate the Golden Loan.

20.    After reinstating the Golden Loan on December 14, 2017, Debtors allowed the Golden Loan to immediately go back into default. Specifically, Debtors failed to make the payments as required under the Golden Loan Documents on January 1, 2018 and have failed to make any payments due after such date, each of which is a default pursuant to the express terms of the Golden Loan Documents.

21.    In addition to Debtors failure to make the payments required under the Golden Loan, Debtors also purportedly encumbered the Golden Loan Collateral with a Deed of Trust for the benefit of 118 Orangethorpe, LLC ("**Orangethorpe**") in the amount of *$3,500,000.00* on, or about, February 23, 2018 (the "**Orangethorpe DOT**") without the knowledge, or consent, of PPB, which is an additional default under the Golden Loan Documents. **Exhibit 9**. It is particularly troubling to note that the Orangethorpe DOT purports to secure a debt owed by Noble and a "Joel Zubaid". PPB has no knowledge of "Joel Zubaid" and certainly did not consent to Debtors allowing the Golden Loan Collateral to secure the debts of Noble and some unknown third party.

22.    In addition to the Orangethorpe DOT on, or about, February 26, 2018 Debtors purportedly encumbered the Golden Loan Collateral with a third Deed of Trust for the benefit of John Matthew and ABC Investment Services, Inc. (the "**Matthew DOT**") in the amount of *$470,000.00*. **Exhibit 10**.    The Matthew DOT was granted without the knowledge, or consent, of PPB, which is a further default under the Golden Loan Documents. The Matthew DOT is even more troubling given it purports only to be executed

8

by "Joel Zubaid" in some unknown capacity for Debtor Golden Crown.  As set forth herein, PPB does not have any relationship with "Joel Zubaid" and "Joel Zubaid" is not identified by any information provided by Debtors or maintained in the public record as a real person involved in Debtors.

23.    In addition to the Orangethorpe DOT and Matthew DOT on or about March 19, 2018 Debtors purportedly further encumbered the Golden Loan Collateral with a Deed of Trust for the benefit of Nayan Patel and Ramila Patel in the amount of *$2,000,000.00* (the "**Patel DOT**") for Noble and "Joel Zubaid".  **Exhibit 11**. The Patel DOT was granted without the knowledge, or consent, of PPB which is, again, a further default under the Golden Loan Documents.  As with the Matthew DOT, the only person purporting to execute the Patel DOT is "Joel Zubaid".

24.    Based on the forgoing, to the best of PPB's understanding, in *two (2) months* Debtors encumbered the Golden Loan Collateral in direct contravention of the Golden Loan Documents, in an amount of approximately **$5,970,000.00** some or all of which may be debts of third parties.

25.    Here it is important to note, that despite apparently being in possession of *$5,970,000.00,* Noble directed, or otherwise allowed Debtor to fail to, among other things: 1) pay its employees; 2) pay transaction privilege taxes; 3) service its debt; 4) pay its vendors; and 5) otherwise maintain and protect the Golden Loan Collateral.[4]

26.    The Golden Loan Collateral secures PPBs loan to Debtors which as of June 1, 2018, remains outstanding in the approximate amount of **$4,515,774.77**.  **Exhibit 12**.  PPB

---

[4] PPB has been advised by the Receiver, which information has been confirmed by Tristar that the Kingman Hotel requires certain maintenance including: 1) roof repairs; 2) repairs to rooms to rectify water damage created by Debtor's failure to properly maintain the roof; and 3) other miscellaneous maintenance issues related to the Hotel.

4834-3767-8951.2

believes that the Golden Loan Collateral has substantially decreased in value since as a result of Debtor's closure of the Kingman Hotel and the problems associated with such closure.

**C.**    **Arizona Receivership**

27.    Given Debtor's multiple and material breaches of the Golden Loan Documents outlined herein on, or about, PPB filed a Complaint with the Mohave Court to obtain a Receiver over the Golden Loan Collateral in that certain matter captioned Pacific Premier Bank v. Golden Crown Properties, LLC, et al. (Case no. S8015CV201800268).

28.    On March 27, 2018 approximately two (2) days before the Mohave Court was to hold an Order to Show Cause hearing to appoint the Receiver requested by PPB, Noble contacted PPB and left a voice message for Mr. Scott Torrence with PPB advising Mr. Torrence that Debtor would be abandoning the Golden Loan Collateral.    **Exhibit 13.**

29.    Debtors and Guarantors were represented at the Order to Show Cause hearing held by the Mohave Court on March 29, 2018 by Mr. Robert Moore with the law firm of Phelps and Moore, PLC.[5]

30.    During the aforementioned hearing Debtors and Guarantors through their counsel acknowledged that the Golden Loan Collateral had been abandoned by the Debtors and stipulated to the appointment of the Receiver as requested by PPB.    The fact that Debtors stipulated to the Receiver is extremely important to this Court's consideration as the Debtors admitted they were unable to operate the Kingman Hotel.

31.    By its Order dated March 29, 2018 the Mohave Court appointed Mr. Robert Itkin of Simon Consulting as the Receiver for the Golden Loan Collateral (the

---

[5] On, or about, May 10, 2018 Phelps & Moore, PLC withdrew as counsel for Debtor.  See **Exhibit 18**.

"**Receivership Order**").  A true and accurate copy of the Receivership Order is attached hereto as **Exhibit 21**.

32.    Upon undertaking its duties, the Receiver immediately encountered a myriad of issues caused by Debtors' abandonment and squandering of the Golden Loan Collateral.

33.    A summary of the more serious issues PPB is advised the Receiver encountered include, but are not limited to:

a.    The Arizona Department of Revenue contacted the Receiver and advised him that Debtors failed to pay Arizona's Transaction Privilege Taxes for approximately four (4) years.  **Exhibit 14.**

b.    Debtors failed to pay their employees for a number of weeks which resulted in inquiries from both the U.S. Department of Labor and the Industrial Commission for the State of Arizona.  See **Exhibit 15** and **Exhibit 16**.

c.    Debtors failed to pay the real property taxes owed for approximately twelve (12) months.  **Exhibit 17**.  These amounts were advanced by PPB through the Receiver to protect the Golden Loan Collateral.

d.    The Receiver was advised that Noble had contacted third parties to hide Receivership Property from the Receiver including, but not limited to, the vintage automobile residing in front of the Kingman Hotel used to market the facilities.  Noble's efforts to conceal the Golden Loan Collateral in and of itself are justification enough to provide PPB with the relief it requests by this Motion.

e.    Debtors failed to pay all of the vendors and service providers necessary to operate the Golden Loan Collateral.  This was especially problematic given that Kingman, Arizona is a smaller community and there are very few vendors available in the locale to provide the services required to operate the Golden Loan Collateral.

f.    By abandoning the Golden Loan Collateral Debtors violated the terms of the franchise agreement with Wyndham.  **Exhibit 19**.  Debtors' breach of the

11

franchise agreement with Wyndham prohibited the Golden Loan Collateral from (i) operating in the Wyndham ecosystem to secure, among other things, room reservations booked at a national level for the Ramada brand; or (ii) even holding itself out to the public under the Ramada flag.

g.    Related to, and a byproduct of, Debtors' breach of the franchise agreement with Wyndham were violations of various agreements with Wyndham's business partners which resulted in the Receiver being unable to reinstate merchant accounts for the purposes of processing credit cards for the Kingman Hotel as part of the national Wyndham ecosystem.

34.    For approximately the past sixty (60) days the Receiver has been working through the issues created by Debtors when they abandoned and otherwise mismanaged the Golden Loan Collateral.  The Receiver's efforts have been funded almost exclusively with the financial assistance of PPB.  In this regard, the Receiver was successful in getting the Kingman Hotel operating albeit in a limited capacity and was on the cusp of resolving the issues necessary for the Kingman Hotel to operate in the Wyndham ecosystem.

35.    Due to PPB's financial assistance and the Receiver's dedication and skill, approximately two (2) to three (3) weeks prior to the filing of the Chapter 11 Case the Receiver was able to re-open the hotel and restaurant, albeit in an extremely limited capacity, due to the havoc Debtors created in the Wyndham ecosystem particularly the problem with processing credit card payments within the national Wyndham ecosystem.

**D.    Debtors' Harm to the Golden Loan Collateral Post-Petition.**

36.    After PPB spent considerable financial resources and time to secure and re-open the Kingman Hotel under the Receiver and the Receiver was on the verge of getting the

12

4834-3767-8951.2

Golden Loan Collateral fully operational, Debtors demanded turn-over of the Golden Loan Collateral after Debtors filed the Chapter 11 Case on or about May 25, 2018.

37.     In continuance of Debtors' reckless prepetition behavior with respect to the Golden Loan Collateral, Debtors could not be bothered to comply with the Bankruptcy Code in securing a smooth turn-over of the Golden Loan Collateral from the Receiver, in its capacity as a Custodian under the Bankruptcy Code, by allowing the Receiver to conduct the accounting required under section 543 of the Bankruptcy Code.

38.     Instead, Debtors dispatched its agent Tristar unannounced, and without any warning or notice, to PPB's counsel, the Receiver or AMI to the Kingman Hotel on May 31, 2018.

39.     Upon arriving at the Kingman Hotel Tristar demanded an immediate turn-over of the Golden Loan Collateral, and apparently, fired AMI.

40.     Moreover, what Debtors and their agent Tristar fail to appreciate is that Kingman, Arizona is a very small community approximately two to three hours from Las Vegas and approximately three to four hours from Phoenix.  In this respect, Kingman not only has a very small labor force, but a labor force where the people know one another and share information.

41.     As noted herein, Debtors failed to pay its employees for approximately three (3) weeks prior to chaining the doors shut on the Kingman Hotel.  This information spread very quickly through the people that live and work in the hospitality industry in Kingman.

42.     When Debtors' agent Tristar showed up at the property unannounced, and without this Court's imprimatur, and advised the employees that they would now be working

13

for Debtors the employees refused to work and, quite reasonably, demanded to know when they would be paid. **Exhibit 20**.

43.     Of course neither Debtors nor Tristar could answer the questions of the employees because Debtor had violated section 543 of the Bankruptcy Code and precluded the Receiver, in his capacity as Custodian, to go through the accounting process and otherwise work with this Court, PPB and the Receiver to undertake a smooth transition of the operations of the business to maintain the value of the Golden Loan Collateral for the benefit of Debtors' legitimate creditors.

44.     Based on the manner in which Debtor and Tristar handled the transition of the Golden Loan Collateral, PPB is advised that the operations of the business ceased and/or were significantly interrupted the morning of June 1, 2018 and at least one (1) employee quit. Upon information and belief additional work stoppages occurred as Debtors and their agent Tristar had no way of paying the employees working at the Kingman Hotel.

45.     The harm visited upon the Golden Loan Collateral by the Debtor, and its agents, is obvious. Not only did the manner in which the Debtor seized control of the Kingman Hotel violate the Bankruptcy Code, it also: 1) forced the business to shut down, 2) damaged what little good will the Receiver had been able to create with the Kingman workforce; and 3) resulted in employees quitting who will now need to be replaced and retrained.

46.     Despite having filed the Chapter 11 Case on May 25, 2018 (over two (2) weeks ago) Debtors have provided absolutely no information regarding how Debtors plan to address and rectify its gross mismanagement of the Golden Loan Collateral going forward. Specifically, Debtors have not explained to PPB, or this Court, why they should be entrusted

4834-3767-8951.2

with the fiduciary responsibility of reorganizing the businesses as debtors in possession in light of Debtors' extensive history of wasting and otherwise mismanaging the Golden Loan Collateral as evidenced by, among other things: 1) Debtors' failure to pay taxes; 2) Debtors' failure to pay their employees; and 3) Debtors' decision to quit paying its debts while otherwise saddling the Golden Loan Collateral with debts far in excess of the amount that could be serviced by revenues generated from the Debtors' businesses.

47.    Further, Debtors provide absolutely no information regarding how they will be able to restore the franchise (or any obtain any franchise at all) so that Kingman Hotel can take advantage of the national brand which the Receiver was on the cusp of resolving.

48.    Debtors also, have no plan to obtain the merchant account necessary to operate the Kingman Hotel within the Wyndham ecosystem.

49.    Given Debtors abandonment of the Golden Loan Collateral the problems associated with the abandonment and the debt with which Debtors have encumbered the Golden Loan Collateral there is no possible way for Debtors to reorganize the business.

## V.    **Legal Argument**

Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, "the court *shall* convert a [chapter 11] case to a case under chapter 7 or dismiss a [chapter 11] case, whichever is in the best interest of creditors and the estate, if the movant establishes cause." (emphasis added). 11 U.S.C. § 1112(b)(1). Although the movant carries the initial burden to establish cause for dismissal or conversion, once cause is shown, the Court has limited discretion to refuse to dismiss or convert the case. *In re Products Int'l Co.*, 395 B.R. 101, 109-10 (Bankr. D. Ariz. 2008); *In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 535 (Bankr. N.D. 2011). Section 1112(b)(4) contains an illustrative, but not exhaustive, list of what constitutes "cause," including, among other things, substantial or

15

continuing loss to or diminution of the estate and no reasonable likelihood of rehabilitation.[6]
*See In re Mense*, 509 B.R. 269, 284 (Bankr. C.D. Cal 2014); *see also In re Products Int'l Co.*, 395 B.R. 101, 109-10 (Bankr. D. Ariz. 2008).    The court has wide discretion in determining what constitutes cause and should also consider other factors arising in individual cases that are not enumerated in section 1112(b)(4).    *In re Prods. Int'l Co.*, 395 B.R. at 109-10.    Although bad faith is not a factor listed in section 1112(b)(4), courts have routinely found this to be a basis for dismissal or conversion of a chapter 11 case.    *In re Gilliam*, 2005 WL 6960202, at *3 (B.A.P. 9th Cir. Aug. 10, 2005); *In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000) subsequently aff'd 336 F.3d 864 (9th Cir. 2003)(converting chapter 11 case filed in bad faith to chapter 7); *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995).

Here, cause exists to dismiss or convert the Chapter 11 Case because (i) there is diminution to the estate with no reasonable likelihood of rehabilitation, and (ii) Debtor filed its Chapter 11 Case in bad faith for the sole purpose of preventing PPB from foreclosing on the Golden Loan Collateral.

**A.    Loss to, or Diminution of, the Estate and Absence of a Reasonable Likelihood of Rehabilitation.**

Cause for dismissal or conversion to a chapter 7 case exists under section 1112(b)(4)(A) of the Bankruptcy Code when there is both "continuing loss to or diminution of the estate" and "absence of a reasonable likelihood of rehabilitation."    11 U.S.C. § 1112(b)(4)(A).    The rationale behind including these circumstances as cause to dismiss or convert a chapter 11 case is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."    *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004)(quotation omitted).

---

[6] PPB affirmatively asserts that Debtor's seizure of the Golden Loan Collateral in the manner set forth herein may also provide PPB with grounds to have the Chapter 11 Case dismissed under the "gross mismanagement of the estate" language contained in Section 1122(b)(4).

4834-3767-8951.2

The diminution of the estate need not be significant in order to satisfy the first element of section 1112(b)(4)(A). *In re Mense*, 509 B.R. 269, 284 (Bankr.C.D. Cal. 2014)(citing *In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr.E.D.N.Y. 1992)). Instead, "all that needs to be found is that the estate has suffered some diminution in value." *Id.* When a debtor has ceased business operations and liquidated almost all of its assets, "any negative cash flow – including resulting only from administrative expenses – effectively comes straight from the pockets of the creditors." *Loop Corp.*, 379 F.3d at 516. Accrual of interest has also been deemed to constitute a diminution in value of the estate for purposes of section 1112(b)(4)(A). *See Keeley*, 460 B.R. at 540 (finding that "there is substantial and continuing diminution of the estate by accrual of additional interest and penalties"); *In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009)(same). Additionally, negative cash flow alone is sufficient to constitute loss or diminution of the estate. *Loop Corp.*, 379 F.3d at 515-16.

Debtors are unable to refute that there is a substantial, and material, diminution to Debtors' estates. Debtors abandoned the Kingman Hotel and stipulated to the appointment of the Receiver. Debtors have no employees, because they failed to pay their employees and chained the doors to the Kingman Hotel shut prepetition.[7] Given what PPB learned from the Receiver during the pendency of the receivership, PPB believes that Debtors will not be able to become part of the Wyndham ecosystem again thereby availing the Kingman Hotel of the ability to operate under the Ramada brand on a national level and, to date, Debtors have provided no information to refute PPB's belief. What little income the Receiver was able to generate with the Kingman Hotel operating at a limited capacity was insufficient to meet the obligations of the Golden Loan Collateral as a going concern and required significant financial assistance from PPB. Moreover, the activities of Debtors and Tristar not only erased what little progress the Receiver had been able to achieve in the past sixty (60) days

---

[7] The status of the employees, if any, currently working at the Kingman Hotel is unclear. To the best of PPB's understanding the employees working at the Kingman Hotel when Debtors unreasonably seized control of the Kingman Hotel were working for the Receiver and/or AMI. Debtors and their agent Tristar have failed to advise PPB as to how any employees currently working at the Kingman Hotel, if any, are employed.

1    but also created liabilities for Debtors' estates based on the failure of Debtors to comply with

2    the relevant portions of the Bankruptcy Code.

3        The second element of section 1112(b)(4)(A) requires the absence of a reasonable

4    likelihood of rehabilitation. Rehabilitation "contemplates the successful maintenance or re-

5    establishment of the debtor's business operations." *In re Vallambrosa*, 419 B.R. at 89

6    (quotations omitted). There is no reasonable likelihood of rehabilitation when the debtor's

7    business operations do not justify continuance of the reorganization effort or when there is

8    no business left to rehabilitate. *See In re Mense*, 509 B.R. at 284 (citations omitted); *Loop

9    Corp.*, 379 F.3d at 516.

10       Here, there is no reasonable likelihood of rehabilitation. Debtor has no employees, no

11   operating income, no access to financing and no business to restore – Debtor abandoned the

12   Golden Loan Collateral by chaining shutting the doors of the Kingman Hotel and leaving the

13   property to be occupied by squatters. The only reason there is any business at all is because

14   of the Herculean efforts of the Receiver – who Debtors seek to replace – and the significant

15   financial investment of PPB to salvage what it was able from the Golden Loan Collateral

16   after the same had been squandered by the Debtors. As stated herein, the Kingman Hotel

17   was operating at a very limited capacity before Debtors and Tristar destroyed all of the

18   Receiver's hard work, progress and operational good will. The revenues being generated by

19   the Kingman Hotel were, and are, insufficient to meet its obligations as a going concern and

20   Debtors have failed to articulate how they are going to fund the operations of the Kingman

21   Hotel going forward.

22       **B.    Chapter 11 Filing was in Bad Faith**

23       Although section 1112(b) of the Bankruptcy Code does not expressly require that a

24   petition be filed in good faith, courts have long since recognized that the lack of good faith in

25   filing a chapter 11 petition constitutes cause for dismissal. *In re St. Paul Self Storage Lt.

26   P'ship*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995)(citing *In re Marsch*, 36 F.3d at 828;

27   *State of Idaho, Dept. of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986));

28

1  see also *In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000) subsequently aff'd,

2  336 F.3d 864 (9th Cir. 2003)(converting chapter 11 case filed in bad faith to chapter 7).

3      To determine whether a debtor has filed a petition in bad faith, courts weigh a variety

4  of factors such as whether: (1) the debtor has only one asset; (2) the debtor has an ongoing

5  business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash

6  flow or sources of income to sustain a plan of reorganization or to make adequate protection

7  payments; and (5) the case is essentially a two party dispute capable of prompt adjudication

8  in state court. *In re St. Paul,* 185 B.R. at 582-83. No one factor is dispositive. Indeed, "[a]ll

9  the facts and circumstances leading up to the filing of the case, and the conduct of the Debtor

10  during the case, can properly be considered by the Court in determining whether the Chapter

11  11 case was subject to dismissal or conversion 'for cause' for bad faith/lack of the 'good

12  faith.'" *In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000) subsequently aff'd, 336

13  F.3d 864 (9th Cir. 2003). The debtor has the burden of proving good faith. *Id.*

14      Here, the factors set forth above and Debtors' conduct demonstrate that Debtors filed

15  the Chapter 11 Case in bad faith. Debtors' only asset is the Kingman Hotel. Debtors have

16  no viable ongoing business to reorganize and no employees as they walked away from the

17  Kingman Hotel. Debtors have little to no income, no cash flow, and no access to financing

18  to sustain a plan of reorganization and the Kingman Hotel is not capable of generating such

19  cash flow. In light of the forgoing it is abundantly clear that the only reason Debtor filed the

20  Chapter 11 Case was to prevent PPB from exercising its rights under the Golden Loan

21  Documents.

22      **C.    Debtor's Conduct Requires a Chapter 11 Trustee be Appointed.**

23      To the extent the Court is not willing to dismiss, or convert, the Chapter 11 Case, PPB

24  respectfully requests this Court appoint a chapter 11 trustee given Debtors' history of

25  mismanaging the Golden Loan Collateral both before ***and after*** the Chapter 11 Case was

26  filed pursuant to section 1104(a) of the Bankruptcy Code and rules 2007.1 and 9014 of the

27  Federal Rules of Bankruptcy Procedure as follows.

28

Section 1104(a)(1) of the Bankruptcy Code specifically lists "dishonesty", "incompetence" and "gross mismanagement of the affairs of debtor" as examples of the type of "cause" which would compel a Court to appoint a chapter 11 trustee. Notably, section 1104(a)(1) expressly states that this Court may analyze the activities of Debtor "either before or after the commencement of the case." 11 U.S.C. § 1104(a)(1) That said, an inquiry into whether "cause" exists for appointment of trustee is not limited to the factors listed in section 1104(a)(1). The statute also mandates the appointment of a chapter 11 trustee if "similar cause" is present, either before or after commencement of the case. 11 U.S.C. § 1104(a)(1); *In re IPofA West Oaks Mall, LP*, 2007 WL 3223295 at *3 (Bankr. E.D. Va. Oct 29, 2007)("The rule of construction contained in § 102(3) underscores that the bases for finding cause for the appointment of a trustee listed in § 1104(a) are not exclusive"); *see In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988)(in making a determination under section 1104(a), the court may examine both pre-petition and post-petition conduct). As further explained by the court in *In re La Sherene, Inc.*, 3 B.R. 169, 175 (Bankr.N.D.Ga. 1980):

> It is only the prior actions of the debtor's management that are relevant to the motion. The question presented in a Section 1104(a) motion is whether the pre-motion acts or omissions of current management (whether committed before or after filing of the debtor's petition), reflected against the criteria of Section 1104(a)(1) supply the cause to require the appointment of a trustee to protect the debtor's assets for creditors and to guide the debtor's actions in the near future while a plan can be formulated and proposed. Future plans, revealed by current management through testimony or much harder evidence, will not condone past management frauds, dishonesty, gross mismanagement, or incompetence so as to overcome the statutory requirement of Section 1104(a)(1) for the appointment of a trustee.

In *In the Matter of Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000), the court listed several factors upon which decisions to appoint chapter 11 trustees have been based including: 1) materiality of the misconduct; 2) evenhandedness or lack of same in dealings with insiders or affiliated entities vis-à-vis other creditors or customers; and 3) self-dealing by management or waste or squandering of corporate assets. Even the existence of just one

factor constituting cause under section 1104(a)(1) would require the Court to appoint a trustee, here there are at least three (3) factors that exist which compel the appointment of a chapter 11 trustee.[8]

Additionally, it is important to stress that courts have found cause to exist for the appointment of a trustee where there is doubt about management's ability to carry out its fiduciary duties.[9] *See In re IPofA West Oaks Mall, LP*, 2007 WL 3223295, at *3 ("Debtors in possession are fiduciaries of the estate and breach of their fiduciary duties may constitute cause."); *see also Prof'l Accountants Referral Services*, 142 BR. 424, 429 (Bankr.D.Colo. 1992); *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998). A Chapter 11 debtor and its managers owe fiduciary duties to the debtor's estate and its creditors. *See In re IPofA West Oaks Mall, LP*, 2007 WL 3223295, at *3 ("The designated representative of the Debtors owes a fiduciary duty to maximize the Debtor's estate for the benefit of Debtor's creditors."); *see also In re JTR Corp.*, 958 F.2d 602, 604 (4th Cir. 1992)(noting that a debtor in possession "owes the same duties as a trustee"). Based on the pre-petition conduct of Debtor as well as its conduct post-petition, it is virtually impossible for PPB to have confidence that the Debtor will fulfill its role as a fiduciary to "treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 699 (Bankr. C.D. Cal. 2008). Here, because the Debtor cannot be depended on to carry out its fiduciary duties, an independent trustee must

---

[8] PPB asserts that there are *at least* three (3) factors supporting the appointment of a chapter 11 trustee given Debtors failed to turn-over the substantive books and records for the business as requested by both the Receiver, PPB and expressly required by the Receivership Order. As a result, PPB remains concerned about the prepetition conduct of Debtors particularly in light of the Orangethorpe DOT, Matthew DOT and the Patel DOT and the fact that Noble and Joel Zubaid apparently controlled **approximately $6,000,000.00** that has not been accounted for by Debtors and suspects that there may be other factors enunciated in *Intercat, Inc.*, 257 B.R. 911 that compel appointment of a chapter 11 trustee. PPB further expressly reserves all rights with respect to the validity of the Orangethorpe DOT, Matthew DOT and the Patel DOT.

[9] "Cause" also has been found where a contentious and legalistic dispute has broken out between the debtor and creditors. *In re The Bible Speaks*, 74 B.R. 511, 513 (Bankr. D. Mass. 1987). "The need for a neutral party to mediate disputes between the debtor and its creditors is ground for a trustee's appointment." *Id.*; *see also In re Petit*, 182 B.R. 64, 70 (D. Me. 1995)(holding that in a situation with intense antagonism and animosity "the appointment of a trustee may be the only way that the bankruptcy court can ensure that the reorganization will proceed"); 7 Collier on Bankruptcy ¶ 1104.02[3][d][ii] ("[W]hen significant tensions are present among the parties or corporate governance issues arise that place management in a conflicted position, appointment of a trustee may diffuse tensions and relieve suspicions about the debtor's managers.") Given Debtors' abandonment of the Golden Loan Collateral prepetition and the gross mismanagement thereof the trustee as a "neutral" likely would be beneficial in this case. This is especially true given Debtors' hostile seizure of the Golden Loan Collateral to the detriment of the Debtor's estate.

21

1  be appointed. *See in re IPofA West Oaks Mall, LP*, 2007 WL 3223295, at *4 ("A trustee

2  should be appointed when the debtor in possession cannot perform its fiduciary duties"); *In*

3  *re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)("The

4  willingness of Congress to leave a debtor-in-possession is premised on an expectation that

5  current management can be depended upon to carry out the fiduciary responsibilities of a

6  trustee. And if the debtor in possession defaults in this respect, [s]ection 1104(a)(1) [of the

7  Bankruptcy Code] commands that stewardship of the reorganization effort must be turned

8  over to an independent trustee.")(cited with approval in *In re Marvel Entertainment Group,*

9  *Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)). Based upon the foregoing, cause exists for the

10 immediate appointment of a chapter 11 trustee pursuant to section 1104(a). As set forth in

11 more detail above Debtors grossly mismanaged the Golden Loan Collateral prior to filing the

12 Chapter 11 Case and the activities of Debtors post-petition establish that Debtors simply do

13 not have the ability to manage the Golden Loan Collateral.

14  **D.      Appointment of Trustee is in the Best Interests of Creditors Under 11**

15 **U.S.C. § 1104 (a)(2).**

16       Even if this Court does not find "cause" pursuant to section 1104(a)(1) of the

17 Bankruptcy Code, section 1104(a)(2) provides that the Court shall order the appointment of a

18 trustee "if such appointment is in the interests of creditors, any equity security holders, and

19 other interests of the estate, without regard to the number of holders of securities of the

20 debtor or the amount of the assets or liabilities of the debtor." 11 U.S.C. to § 1104(a)(2); *see*

21 *In re Euro-American Lodging Corp*, 365 B.R. 421, 428 (Bankr. S.D.N.Y.

22 2007)("§ 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even

23 if no 'cause' exists").

24       Unlike section 1104(a)(1), which provides for mandatory appointment upon a specific

25 finding of cause, section 1104(a)(2) envisions a flexible standard. "The factors constituting a

26 basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily

27 involve a great deal of judicial discretion. *In re V. Savino Oil & Heating Co., Inc.* 99 B.R. at

28 527, n.11. "[A]t bottom, it seems that § 1104(a)(2) reflects the practical reality that a trustee

1    is needed." *In re Euro-American Lodging Corp.*, 365 at 428 (internal citations and

2    quotations omitted).

3          One court has suggested that a trustee may be appointed after a review of (i) the

4    trustworthiness of the debtor, (ii) the past and present performance of the debtor, (iii) the

5    confidence – or lack thereof – of the business community and creditors in management, and

6    (iv) the costs and benefits of appointing a trustee. *In re Ionosphere Clubs, Inc.*, 113 B.R.

7    164, 168 (Bankr. S.D.N.Y. 1990)(citations omitted).  In the recent case of *In re The Centre*

8    *for Management and Technology, Inc.*, 2007 WL 3197221, at *6 (Bankr. D. Md. Oct. 26,

9    2007), the Court held that a movant could meet its burden for the appointment of a trustee

10   during the gap period by demonstrating a need to preserve the estate property and prevent

11   loss to the estate.

12         PPB submits that the information provided herein supporting the appointment of a

13   chapter 11 trustee under section 1104(a)(1) also satisfies the requirement for the appointment

14   of a chapter 11 trustee under section 1104(a)(2).  Debtors failed to pay their debts including

15   wages and taxes and walked away from the Golden Loan Collateral despite Debtors' equity

16   owners apparently being in possession of almost $6,000,000.00.  After filing the Chapter 11

17   Case, Debtors' course of action was to violate the relevant provisions of the Bankruptcy

18   Code and embark on a path that interrupted the operation of the Golden Loan Collateral and

19   generated liability to Debtors' estates.  The existence of the forgoing factors each of which is

20   properly characterized as "cause" under section 1104(a)(1) also compel the conclusion that

21   the appointment of a Chapter 11 trustee is in the best interests of all parties to the case under

22   section 1104(a)(2).

23         The appointment of a chapter 11 trustee will prevent current conflicts of interest, most

24   particularly the past and continuing waste of Debtors' assets by Debtors.  In addition a

25   chapter 11 trustee's decisions regarding the form and structure of a plan of reorganization

26   will not be unduly influenced by the Debtors' sole members the Guarantors.  The trustee can

27   independently evaluate matters that Noble (absent appointment of the requested chapter 11

28   trustee), as the real party in control of Debtors, is incapable of evaluating because of his own

4834-3767-8951.2

1  self-interest and well documented lack of ability in managing hotels and restaurants such as

2  the Golden Loan Collateral.

3       The trustee will serve as a neutral party to administer the Debtor's assets impartially,

4  without regard to any animosity which results from those aspects of the case which appear to

5  be more like a two-party dispute between Debtor and PPB than a legitimate bankruptcy case.

6  **VI.**    **CONCLUSION**

7       Wherefore, PPB respectfully requests this Court dismiss (or convert) the Chapter 11

8  Case or in the alternative appoint a chapter 11 trustee for the reasons set forth herein.

9       SUBMITTED this 13th day of June, 2018.

10

11                 KUTAK ROCK, LLP

12                 By:/s/ Jacob L. Sherrard
                  Jacob L. Sherrard

13                    8601 N. Scottsdale Road, Suite 300
                  Scottsdale, Arizona 85253-2742

14                    Attorneys for Pacific Premier Bank

15  Original filed electronically this 13th
day of June, 2018, with:

16

17  Clerk of the United States Bankruptcy Court
Central District of California (Riverside)

18

19  COPIES mailed this 13th day of June, 2018, to:

20  Sandford L. Frey, Esq.
Stuart I. Koenig, Esq.

21  Leech Tishman Fuscaldo & Lampl, Inc.

22  200 South Los Robles Avenue, Suite 210
Pasadena, CA 91101

23  *Attorneys for Debtors*

24  U.S. Trustee

25  United States Trustee (RS)
3801 University Avenue, Suite 720

26  Riverside, CA 92501-3100

27

28

4834-3767-8951.2

Mohammad Tehrani, Esq.
3801 University Avenue, Suite 720
Riverside, CA 92501
*Attorneys for U.S. Trustee*

Daniel M. Eliades, Esq.
David S. Catuogno, Esq.
Matteo Percontino, Esq.
LECLAIRRYAN, PLLC
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, NY 07102
*Attorneys for Ramada Worldwide, Inc.*

Dana M. Perlman, Esq.
Perlman & Associates
9454 Wilshire Boulevard, Suite 525
Beverly Hills, CA 90212-2904
*Attorneys for Alliance Laundry Systems, LLC*

20 Largest Unsecured Creditors (Attached)

Master Mailing Matrix (Attached)

/s/ Rebekah Poston

4834-3767-8951.2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

8601 N. Scottsdale Road, Suite 300, Scottsdale, AZ 85253

A true and correct copy of the foregoing document entitled (*specify*): Motion to Dismiss, or, Alternatively, Motion to
Appoint Trustee

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
06/13/2018    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

sfrey@leechtishman.com
Skoenig@leechtishman.com
Mohammad.V.Tehrani@usdoj.gov
dperlman@perlmanlaw.com

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   06/13/2018    , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

See attached page.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   06/13/2018    , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

U.S. Banrkuptcy Court - Riverside Division
3420 Twelfth Street, Suite 345
Riverside, CA 92501
Attn:  Honorable Scott H. Yun

Everett L. Green
Office of the United States Trustee
3801 University Avenue, Suite 720
Riverside, CA 92501

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/13/2018 | Rebekah K. Poston | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                            **F 9013-3.1.PROOF.SERVICE**

**SERVICE VIA ELECTRONIC NOTICE:**

Gary Klausner:  gek@lnbyb.com
Lindsey L. Smith:  lls@lnbyb.com
Daniel M. Eliades:  daniel.eliades@leclairryan.com
David S. Catuogno:  david.catuogno@leclairryan.com
Matteo Percontino:  matteo.percontino@leclairryan.com
David S. Quintana:  dsquintanalaw@gmail.com

**VIA SERVICE BY MAIL:**

Sandford L. Frey, Esq.
Stuart I. Koenig, Esq.
Leech Tishman Fuscaldo & Lampl, Inc.
200 South Los Robles Avenue, Suite 210
Pasadena, CA 91101
*Attorneys for Debtors*

Mohammad Tehrani, Esq.
3801 University Avenue, Suite 720
Riverside, CA 92501
*Attorneys for U.S. Trustee*

Daniel M. Eliades, Esq.
David S. Catuogno, Esq.
Matteo Percontino, Esq.
LECLAIRRYAN, PLLC
One Riverfront Plaza.
1037 Raymond Boulevard, 16th Floor
Newark, NY 07102
*Attorneys for Ramada Worldwide, Inc.*

Dana M. Perlman, Esq.
Perlman & Associates
9454 Wilshire Boulevard, Suite 525
Beverly Hills, CA 90212-2904
*Attorneys for Alliance Laundry Systems, LLC*

**20 Largest Unsecured Creditors (Attached)**
**Master Mailing Matrix (Attached)**

Case 6:18-bk-14462-SY    Doc 2    Filed 05/25/18    Entered 05/25/18 18:46:52    Desc
Main Document    Page 1 of 2

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **66 on 66 Bar & Grill, LLC** |
| United States Bankruptcy Court for the: | **CENTRAL DISTRICT OF CALIFORNIA** |
| Case number (if known): | **6:18-bk-14462** |

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| American Express Bank, FSB c/o Datamark, Inc. Attn: Merchant Financing Counsel 43 Butterfield Circle El Paso, TX 79906 | | Cash Collateral, equipment, inventory | | **$120,000.00** | Unknown | Unknown |
| AmTrust North America P.O. Box 31330 Independence, OH 44131 | | | | | | **$1,500.00** |
| CashBloom, LLC 13263 Ventur Blvd. Suite 101 Studio City, CA 91604 | | Cash Collateral, equipment, and inventory | | **$45,000.00** | $0.00 | **$45,000.00** |
| City of Kingman 310 N Fourth St Kingman, AZ 86401 | | | | | | **$4,000.00** |
| Libertas Funding, LLC 382 Greenwhich Avenue Suite 2, Second Floor Greenwich, CT 06830 | | Cash Collateral, euipment, and inventory | | **$20,000.00** | $0.00 | **$20,000.00** |
| Marlin Bank 2795 E Cottonwood Pkwy# 120 Salt Lake City, UT 84121 | | | | | | **$1,000.00** |
| Shamrock 2540 N. 29th Avenue Phoenix, AZ 85009 | | | | | | **$38,000.00** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor __66 on 66 Bar & Grill, LLC_____    Case number *(if known)* __6:18-bk-14462__
     Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Suddenlink P.O. BOX 742535 Cincinnati, OH 45274 | | | | | | $1,500.00 |
| Sysco 11 S. 80th Ave. Tolleson, AZ 85353 | | | | | | $7,000.00 |
| Unisource electric P.O. Box 80079 Prescott, AZ 86304 | | Elecdtric Service | | | | $5,000.00 |
| Unisource Gas P.O. Box 80079, Prescott Prescott, AZ 86304 | | Gas Service | | | | $4,000.00 |

Label Matrix for local noticing
0973-6
Case 6:18-bk-14462-SY
Central District of California
Riverside
Tue Jun 12 16:02:12 PDT 2018

66 on 66 Bar & Grill, LLC
1865 West Redlands Blvd.
Redlands, CA 92373-3119

Alliance Laundry Systems LLC
Perlman & Associates, ALC
C/o Dana M. Perlman
9454 Wilshire Blvd
Suite 525
Beverly Hills, CA 90212-2904

Pacific Premier Bank
c/o Jacob L. Sherrard, Esq.
8601 N. Scottsdale Road
Suite 300
SCOTTSDALE, AZ 85253-2738

Ramada Worldwide Inc.
c/o LeClairRyan, PLLC
Attn.: Daniel M. Eliades
1037 Raymond Blvd.
16th Floor
Newark, NJ 07102-5424

Riverside Division
3420 Twelfth Street,
Riverside, CA 92501-3819

AmTrust North America
P.O. Box 31330
Independence, OH 44131-0330

American Express Bank, FSB
c/o Datamark, Inc.
Attn: Merchant Financing Counsel
43 Butterfield Circle
El Paso, TX 79906-5202

CashBloom, LLC
13263 Ventur Blvd.
Suite 101
Studio City, CA 91604-1883

City of Kingman
310 N Fourth St
Kingman, AZ 86401-5890

DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA  19101-7346

Jacob L. Sherrard, Esq.
KUTAK ROCK LLP
8601 N Scottsdale Road Suite 300
Scottsdale AZ 85253-2738

Libertas Funding, LLC
382 Greenwhich Avenue
Suite 2, Second Floor
Greenwich, CT 06830-6532

Marlin Bank
2795 E Cottonwood Pkwy# 120
Salt Lake City, UT 84121-7092

Shamrock
2540 N. 29th Avenue
Phoenix, AZ 85009-1682

Suddenlink
P.O. BOX 742535
Cincinnati, OH 45274-2535

Sysco
11 S. 80th Ave.
Tolleson, AZ 85353

U.S. Foods
650 West Buckeye Road
Phoenix, AZ 85043

Unisource Gas
P.O. Box 80079, Prescott
Prescott, AZ 86304-8079

Unisource electric
P.O. Box 80079
Prescott, AZ 86304-8079

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

Sandford L. Frey
Leech Tishman Fuscaldo & Lampl, Inc.
200 South Los Robles Avenue
Suite 210
Pasadena, CA 91101-2419

Stuart I Koenig
Leech Tishman Fuscaldo & Lampl, Inc.
200 South Los Robles Avenue
Suite 210
Pasadena, CA 91101-2419

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

End of Label Matrix
Mailable recipients    22
Bypassed recipients     1
Total                  23